May it please the Court, John Elwood on behalf of DAVITA. I'd like to reserve five minutes for rebuttal. You'll have to keep track of your time. Okay. But of course you may. I plan to focus my argument during the Amy's Kitchen case on whether the change in plan terms violated the Medicare secondary payers provisions. An argument during Virginia Mason on whether such violations are actionable even if Medicare hasn't made payment. To prevent private insurers from pushing Medicare-eligible patients with end-stage renal disease or ESRD off their plans, Congress imposed two prohibitions to ensure plans met their statutory obligations to be primary payers during the first 30 months of a patient's Medicare eligibility. Amy's Kitchen argues, and the District Court held, that because the plans here facially singled out dialysis for disfavored out-of-network treatment, the plan here did not differentiate in the benefits it provides between ESRD patients and others, nor did it take into account that an individual is eligible for Medicare benefits because of ESRD. That was error. The only plausible reason to single out dialysis alone among all possible treatments that Amy's covers is that virtually all ESRD patients are Medicare-eligible and virtually all dialysis spending is for ESRD and not for any other condition. Counsel, I'd like to ask you about both of those aspects. It is true, is it not, that there are people without end-stage renal disease who are on dialysis? That is correct. It is about 3 percent overall. There were 28,000 in a condition called acute kidney injury, which there are about 28,000 in 2016 versus about 800,000 for dialysis, so about 3 percent. On the other piece of it, even under Medicare payments, there is a period of time when people are not eligible for those payments. There are people, at least in that first category, who are never Medicare-eligible potentially. Isn't it also true that there are some people who are not eligible who are covered by this policy? There are some people who have end-stage renal disease who are not eligible for Medicare because of immigration status or because they haven't worked long enough. Again, a very small percentage of people. I don't think there is any dispute. Just in terms of sheer numbers, there is virtual overlap between dialysis and end-stage renal disease. Again, it is a difference of about 3 percent overall. Let me follow up by saying, is it your position that the statute requires some sort of numerical parity if there is a great preponderance of one category versus another, or is it just you have to treat everybody alike in the policy and it falls more heavily on some than on others? I think the thing is you just have to figure out what Congress meant when they say differentiate in any manner. Amy's Kitchen takes the position and the court below takes the position that as long as you treat all dialysis patients differently or treat them the same, that is not differentiating. If that were the statute that Congress was going to write, they would have written a much different statute. Why? What does differentiate mean? Treat differently. If you are just going to be treating end-stage renal disease patients differently from people with a single rare kidney condition, 28,000 people nationwide, 3 percent total, they would have written a much different statute. You cannot treat end-stage renal disease patients differently than other patients needing dialysis. That phrase is not absent of meaning even if it does not mean what you suggest. For example, treat differently in any manner might not mean monetary distinction in payments. It might mean more forms to fill out or more doctor's notes or some other irritating procedural problem. They could have written it so that it was just vis-a-vis other patients needing dialysis. Distinguish between ESRD patients and other patients needing dialysis. That would have taken care of it. The fact that they used the phrase in any manner is a broad term. Presumably, they meant it for some broad purpose. Legislative history talks about direct or indirect. Congress went to the trouble of enacting the statute and amending it repeatedly to enhance enforcement if all it was comparing ESRD to was a relatively rare condition which isn't even that expensive to treat. I think that that's our basic submission is that they would not have written such a broad statute, revisited it so many times, and spilled so much ink on it if all we were talking about here was don't treat ESRD patients differently than this rare group of kidney patients. In addition, I think the reason you can say that this is differentiating is because virtually all dialysis spending is for ESRD. Nobody cares about AKI spending. The amicus here on behalf of Amy's Kitchen, they focused entirely on ESRD spending because even more identity between dialysis and ESRD patients is identity between dialysis spending and ESRD spending because again, AKI, it usually only takes a few treatments for people to get over that versus over 100 per year and so all the One of the points you're making, the central point you're making is that Congress could have written this differently and to your ear or eye more clearly, but that's true for an awful lot of statutes that Congress could write things better. Our business is looking at somewhat awkwardly written statutes and I have trouble reading it in any other way than Congress saying all dialysis treatment treat all dialysis patients should be treated the same way rather than dialysis treatment treat patients should be treated the same as cancer patients and other patients. It just doesn't read very well the way you want it to read. Well, they just say patients without without ESRD or other patients I think is the phrase and patients with other expensive equally expensive conditions are just the same are just the same and I think that it doesn't seem realistic to me that Congress has spent so much time, you know, enacting this increasing enforcement if all they had to do all along would just say we're not going to cover dialysis and if in addition to this, you know, there is this language in the regulation that says that, you know, failure to cover renal dialysis is differentiation which is inconsistent with any that's in the federal register. It wasn't actually codified but it's there and then finally you don't have to have that much predominance in order to say that what they're doing is trying to go after this disfavored class at ESRD. What Amy's is when they say alone among all treatments we're going to single out dialysis. You don't have to have it the perfect tailoring where it only covers the protected class of ESRD people. The Supreme Court said and the Bray versus Alexandria Women's Clinic said that you can infer and attempt to disfavor a class if the targeted conduct is engaged in predominantly by a particular class of people and again 97 percent of the people who do dialysis are ESRD and, you know, compare that to sickle cell anemia where, you know, everyone would say that if that is a target sickle cell anemia it's against African Americans even though something like 14 percent of sickle cell patients are not African Americans. If you are suggesting it would have written a completely different statute that says that all serious illnesses must be compensated at the same level or something along those lines something exceedingly different from what exists here. I think let me see here I disagree your honor because it says differentiate and the benefits it provides between individuals having end-stage renal disease that's perfectly clear and other individuals covered by such plan on the basis of end-stage renal disease the need for renal dialysis or any any other matter. The fact that they included both in any other matter and on the basis of the existence of end-stage on the basis of the existence of end-stage renal disease suggests that you know they didn't write this whole statute just to address you know this vanishingly small group of patients 28,000 again the orphan drug statute they consider that for you know rare diseases the cutoff there is 200,000 patients this is less than it's a little more than a tenth of that cutoff so this is a very rare disease a kidney injury we again we cited Nijuan versus doesn't accomplish I'm not sure that's right Congress does all kinds of stuff well the presumption is at least that you don't write a statute to have little effect and what this would do is just say you can cut off dialysis and one of the first things Congress or one of the first things the responsible agency said is if you you know if you if you don't have dialysis that is differentiation they admittedly said that in the federal register site and not in a regulation but anyway in any event you know if there are two different prohibitions that they have to satisfy and even if you don't think that this is differentiation I think that Amy's plan also unlawfully takes into account the fact that ESRD patients are Medicare eligible because the singling out for treatment the only the one treatment that is almost always Medicare eligible validly gives rise to a plausible inference that Medicare was considered if the cost containment or worries about market power or anything else were the reason why Amy's victim did this they would have presumably done other things there are plenty of drugs that are very expensive plenty of therapies that are very expensive the chemotherapy is not on here you know autoimmune disorders multiple sclerosis aren't on here insulin is not here drugs that are still on patent and thus where there is necessarily market power aren't on there orphan drugs that only are by a single manufacturer aren't on there and I think it's fair to say that if there is virtually perfect identity between people who are Medicare eligible and dialysis patients that the fact that they singled out that one thing you can draw the conclusion just for purposes of surviving a motion to dismiss that this is because they're Medicare eligible and when you're thinking about plausibility just consider what counsel for Amy's kitchen said in the hearing below they said and this is after they said suppose that you could get truth serum and say ask somebody whether they consider it and they said yeah we did consider it counsel said that's not a problem we'd be fine because quote nobody has to ignore the realities of the market that people with ESRD are eligible to enroll in Medicare unquote that's in the SCR page 25 when you counsel counsel you're down to about two and a half minutes did you wish to save some rebuttal time sure sure I'll end with that point that I think that at a minimum this is enough to survive plausibility and with that I will reserve the remainder of my time for for rebuttal thank you your honor thank you you may do that and we will now hear from Mr. Short thank you your honor good morning may it please the court my name is Floyd Short and I represent Amy's Kitchen which is a family-owned organic foods company and their plan is to self-fund and administer for the benefit of their employees and their families the appellate DeVita provided dialysis services in this case to patient one and Amy's plan paid all of the dialysis benefits that were defined by the plan to DeVita pursuant to an assignment of benefits that was made by patient one. DeVita did not like the amount of those payments but as with all ERISA plans Amy's plan has discretion to define the benefits in its plan and those are the benefits that were paid here the dialysis treatment that benefits that DeVita received were made pursuant to the dialysis preservation program that's in the record at ER 56 and 57 and that plan was imposed to address the skyrocketing costs of dialysis those costs are are something that DeVita tries to shift onto ERISA plans like Amy's and as a result of the cost containment measures that Amy's plan took as well as other plans that took similar approaches to cost containment for dialysis across the country DeVita sued Amy's plan and several other plans in this case U.S. District Judge John Tiger dismissed DeVita's complaint in its entirety he issued a 17 page well-reasoned opinion that is right on all counts he held correctly that DeVita failed to state a claim under the Medicare Secondary Payer Act that DeVita lacks standing on its claim for benefits under ERISA because all of the benefits that were defined in the plan were paid and the DeVita lacks standing to assert any other claims under ERISA such as a breach of fiduciary duty claim and its claim its equitable claims because let me let me ask you specifically about the issue that opposing counsel has discussed at some length is it your position I assume that the statute does not require parity in the percentage of claim paid between dialysis and other procedures or other types of illness and I I cannot recall the answer to this but are all other procedures and conditions in the plan treated at the same level in other words you know 80 percent of the usual and customary for everything except dialysis or is is it are there other differentiations so the the I think the answer to your honor's first question is the statute does not require some sort of parity or an examination of the impacts or effects of the plan benefit in other words you don't have to look at what percentage of dialysis treatments go to ESRD patients versus other types of patients nothing in the statute requires that nothing in the regulation require that in fact there's a regulation that we've referred to in our brief that I think is very important that's at 42 CFR 411.161c and that regulation provides that it's permissible to have uniform limitations on dialysis and it gives an example where a plan limits its coverage for dialysis sessions to 30 sessions per year and and states that the plan would not be violating the differentiate provision and even even if for example we're to allow 50 physical therapy visits or other kinds of procedures well Judge Tiger held and and correctly so that the relevant comparison has to be focused on the benefit that's provided the treatment a particular treatment as opposed to trying to compare what really are apples and one type of treatment and the benefit for that and other types of treatment what matters under the statute is that patients who are similarly situated and that they receive dialysis treatment those need to be treated similarly and that's what the plan does. So is part of your argument that you think the statute is clear so we'd be at chevron step one presumably and looking at the meaning of the statute but if it's ambiguous in the way that opposing council posits I take it you would say the regulation is a reasonable interpretation and it doesn't require anything more than internal parity with respect to dialysis is that a fair characterization? Yes that's correct your honor I think that's that's absolutely right and the statute is clear and I think it's important to focus on that statutory language the take into account provision states that a plan may not take into account that an individual is entitled to or eligible for medicare benefits based on an ESRD diagnosis. So the focus is are they taking into an account that an individual is entitled to medicare based on ESRD. It's not council raised the oral argument before the district court and my response to a question from the court about whether a plan can make reference to medicare in any way in making its plan definitions and is treating an individual differently because they have medicare or because they have ESRD and Amy's plan does not do that. The other part of the statute the differentiate provision the language is may not differentiate in the benefits it provides between on the one hand individuals having end-stage renal disease and on the other hand individuals covered by such plan on the basis of end-stage renal disease the need for renal dialysis or another. So as Judge Tiger correctly held the comparison that needs to be made is between ESRD patients and non-ESRD patients with respect to the benefit in this case the benefit for dialysis. And Amy's plan very clearly has a single program for all dialysis treatment that applies regardless of the condition requiring the need for dialysis. I identified what I think is probably the most important regulation so that even if you thought that the statutory language had ambiguity again I don't see that it does. The regulations certainly are consistent with that and Judge Tiger addressed one of those very regulations that DeVita identified in his opinion that's the one at 60 Federal Register 45344. Again DeVita wants to try to make a comparison that is not the correct one. As Judge Tiger pointed out you need to compare patients who have ESRD or Medicare with similarly situated individuals and those similarly situated individuals are those who need dialysis. DeVita does not cite a single case in support of its reading of the statute and that's because it can't. There was a decision just last year from the Southern District of Ohio in the DeVita versus Marietta Memorial Hospital case that rejected all these arguments and I think that's worth reference. And Judge Tiger identified in his opinion the National Renal Alliance versus Blue Cross and Blue Shield case from the Northern District of Georgia that is very much on all this case. In that case an insurance plan reduced its dialysis benefit amount by 88 percent and the court held that was not a violation of the MSPA because it provided the same level of reimbursement for dialysis treatment regardless of the insurance reason for receiving the treatment. I'm aware that counsel is planning to address the private right of action in the second argument today but I would like to just speak briefly to that because I think that is a clear alternative basis to affirm Judge Tiger's ruling and it's fully supported in the record. I'm sure counsel for Virginia Mason will ably make those arguments but I do want to emphasize that again the case law here is clear and unanimous that in order to have a private right of action Medicare has to make a payment and that's based on the structure and text of the statute. The Biomed case and this is the Biomed case from the Sixth Circuit, Biomed of Tennessee. In that case the Sixth Circuit did a very careful and thorough reading and analysis of the statute and it concluded that the private right of action is triggered when a plan terminates a plan holder's coverage because that's what happened in that case. The patient got ESRD and went on Medicare and got terminated and the other part of the Sixth Circuit's holding thereby induces Medicare to make a conditional payment on its behalf. This statute is about protecting Medicare. It's about making it a like Amy's, make the primary payment and make it so that Medicare does not have to step in and in this case that's exactly what Amy's did. They made the primary payment in an amount above Medicare. There was no impact on Medicare. I'd also like to address briefly unless the court has further questions on the Medicare Secondary Payer Act, I'd like to address the ERISA claims. There's really two issues there. There's a claim for benefits under ERISA that DeVita made and Judge Tiger held that for that claim there was no injury in fact and that is correct. There's no injury in fact because the patient and then DeVita by assignment received the defined benefits. There's no dispute about that. In fact, it's integral to DeVita's complaint that they were paid the amount that's defined as usual and reasonable in the plan. There was no injury in fact to the patient. The patient got all the benefits that were provided for in the plan, received all the dialysis treatment they were supposed to get and importantly were never balance billed. DeVita makes an argument that there is a threat of balance billing in cases such as this but this threat is a phantom. DeVita has not balance billed patient one, didn't allege in its complaint that it balance billed patient one. In fact, the amicus on its side acknowledges that DeVita has not ever balance billed patients. It doesn't do that and there's good reason for that. Probably the most important which is that a Medicare provider like DeVita is not allowed to balance bill someone who's they're not allowed to do. This is not a kind of injury. In fact, it's too speculative and too hypothetical to satisfy. The other ERISA issue in the case which Judge Tiger got correct as well is the claims under ERISA that DeVita brought for breach of fiduciary duty and equitable release. Those claims are not were properly dismissed in this case because the assignment that patient one made to DeVita does not encompass the spindex case that this court issued in 2009 is right on point. In the spindex case... You're right. I'm sorry. I misstated that. That's okay. I just want to be sure I have the citation that you want us to look at. Thank you. I appreciate that. Spindex physical therapy. I believe Judge Fletcher wrote the opinion in that case. Yes, that's correct. In that case, the assignment had very broad language. The assignment by the patient was for my rights and benefits under this policy. In that case, the provider argued that this encompassed any type of claim that could be made. That was denied. You have used up your time. I think we understand your position on all the issues. Thank you, Your Honor. So we'll turn back to Mr. Elwood for the remaining rebuttal time. Thank you, Your Honor. There are three points I would like to make. I will have to move fairly quickly. The first argument is opposing counsel argues that you can only focus on dialysis because otherwise you can't compare apples to apples. It's all apples to oranges. I disagree. What we have here is that Amy's Kitchen pays full freight Blue Cross Blue Shield negotiated rates for every other condition except for dialysis. Dialysis alone is singled out. You don't have to say what's apples to apples. Everything else gets the rates that Blue Cross negotiated. I think that's a totally valid reading of individuals having end-stage renal disease and other individuals covered by such plan. The statutory language doesn't say anything at all about being limited to other dialysis patients. That brings us to the take into account. The opposing counsel tries to slip out of this argument by saying that it only applies to considering an individual's Medicare eligibility. But I think that when you recognize that overwhelmingly the condition is covered by it and certainly patient one could have gone on. Secondly, I would like to address this 30 treatments provision which is I don't think you have to read very much into that. That's 411.161 and 42 CFR. I think a better explanation of that provision, it doesn't apply of its own force here because it limits it to a certain number of treatments. That's not what we have here. We Amy is saying that you can differentiate against dialysis and also differentiate between different types of dialysis because 30 treatments would take care of acute kidney injury but not end-stage renal disease. That is prohibited by literally the provision right ahead of it, subsection B, Roman at 5. I think a better way to read it is to say that it's just saying as a treatment for dialysis, only six months of insulin, you know, only whatever, a certain number of chemotherapy treatments. Because you can have a bad plan, you just can't have a discriminatory plan. Finally, on the balance billing, we don't balance bill because it says because they are the primary payer. If you look at 54 Federal Register 41718, it says when a plan fails to comply with the law, it is the provider's responsibility to pursue collection from the plan. Thank you, counsel. You have exceeded your a lot of time and I think we understand all the issues from your briefing and your argument today. So the case just argued is submitted and we appreciate very much helpful and thoughtful arguments from both counsel. And the case just argued is submitted. Mr. Elwood, I know you're staying on for the next round but we'll get the other counsel on board as well.
judges: Graber, W. Fletcher, Kobayashi